UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| ROBERT HILTON | ) | |
| | ) | |
| V. | ) | NO. 2:10-CV-47 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

## REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation relative to this judicial appeal of the administrative denial of plaintiff's application for disability insurance benefits under the Social Security Act. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 6 and 14].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was almost 52 years of age at the time of the adverse decision of the Administrative Law Judge ["ALJ"]. He had a ninth grade ("limited") education. He had past relevant work experience as logger operator (skilled and light), coal miner (skilled and medium), a continuous miner and roof bolter (skilled and heavy), and as a miner helper (unskilled and heavy). He alleged disability due to breathing restrictions and musculolskeletal pain. Sixteen months *after* the decision of the ALJ, he alleged a mental impairment due to depression.

The medical evidence is summarized in the plaintiff's brief as follows:

> Plaintiff received treatment at Holston Valley Medical Center on December 15, 2005, due to complaints of neck pain following a motor vehicle accident. Cervical spine x-rays showed soft tissue swelling anterior to the C1 and C2 levels, suggesting the possibility of cervical spine injury, and spondylosis involving the lower cervical spine. The final diagnosis was cervical strain (Tr. 134-138).
> Dr. D. L. Rasmussen examined Plaintiff on May 18, 2006, in connection with a Federal Black Lung claim. Presenting problems included shortness of breath with exertion, being breathless after climbing a single flight of stairs, chronic cough, nighttime wheezing, two pillow orthopnea, frequent colds, and occasional chest pain. Review of systems was positive for decreased hearing in one ear, nocturia, occasional headache, neck pain, and low back pain. Chest x-ray indicated pneumoconiosis; electrocardiogram revealed sinus bradycardia; and ventilator function studies revealed slight obstructive ventilatory impairment. Dr. Rasmussen noted the studies indicated at least minimal loss of lung function, as reflected by Plaintiff's progressive impairment in oxygen transfer during progressive incremental treadmill exercise study. Dr. Rasmussen opined Plaintiff would become significantly more hypoxic were he to attempt to work at his previous work level; he does not retain the pulmonary capacity to perform his last regular coal mine job; he has x-ray changes consistent with pneumoconiosis; it is medically reasonable to conclude he has coal workers' pneumoconiosis which arose from his coal mine employment; and his coal mine dust exposure is the primary cause

2

of his disabling lung disease (Tr. 139-219). On July 13, 2006, Dr. Rasmussen again opined Plaintiff's lung function impairment is enough to prevent him from performing his last work as a continuous miner operator (Tr. 181-182).

On November 11, 2006, Dr. Franklin Ellis reported that Plaintiff has been his patient since June 27, 1991; however, his only visit dated after August 1, 2005 was on September 6, 2006. Dr. Ellis reported that Plaintiff's complaint was generalized low back pain, for which lumbar disc protrusion was likely (Tr. 220-221).

Plaintiff underwent consultative exam by Dr. Karl W. Konrad on December 1, 2006. Presenting complaints included lower back pain occasionally radiating into the right lower extremity, right leg numbness, shortness of breath with any activity, daily episodes of chest pain, presbyopia, and balance problems. Exam was remarkable for hypertension and decreased left eye visual acuity. Lumbar spine x-rays were noted to show superior anterior osteophytes of L2, L3, L4, and L5. The diagnoses were decreased left eye Snellen visual acuity and elevated blood pressure (Tr. 222-225). (Dr. Konrad found no limitations except for the diminished visual acuity and that plaintiff's mental status was normal).

On December 7, 2006, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 20 pounds occasionally, ten pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.; and must avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity (Tr. 226-232).

Dr. Wesley Eastridge treated Plaintiff from February 20, 2006 through January 10, 2007. Conditions and complaints addressed during this time include first stage black lung, lower back pain, neck pain, bruit in neck, shortness of breath on exertion, all over muscle pain, pain down right leg when driving, and left-sided weakness (Tr. 233-241). On February 20, 2006, Dr. Eastridge noted Plaintiff is unable to work and should apply for disability (Tr. 238).

On March 13, 2007, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 20 pounds occasionally, ten pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.; and must avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity (Tr. 242-248).

Plaintiff returned to Dr. Ellis on April 12, 2007 and April 16, 2007, due to continued low back pain with no real improvement. Dr. Ellis noted his suspicion of lumbar disc protrusion. The assessment was lumbar disc syndrome (Tr. 253-254).

Plaintiff was seen at The Heart Center on August 23, 2007, due to the diagnosis of carotid bruit (Tr. 249-250).

Plaintiff continued treatment by Dr. Eastridge from March 14, 2007 through August 23, 2007, during which time he was suffering left eye diminished vision, mixed hyperlipidemia, bruit in neck, daily back pain, shortness of breath, and chest pains. Exams were remarkable for lack of flexion of the left little finger, decreased deep tendon reflexes, and tenderness in the lumbar spine (Tr. 255-261). On May 15, 2007, Dr. Eastridge noted Plaintiff can't work in the mines because of chronic recurrent low back pain and subjective shortness of breath (Tr. 258). On August 23, 2007, Dr. Eastridge

> noted Plaintiff still has back pain, gets short of breath if he exerts, can't sit long without getting up, can't stand long before sitting, and is still unable to work because of back pain and mild COPD. Dr. Eastridge prescribed combivent inhaler, due to Plaintiff's dyspnea, and ibuprofen, due to Plaintiff's back pain (Tr. 251-252, 256-257).
>
> On May 15, 2007, Dr. Eastridge opined Plaintiff can lift/carry a maximum of 30 pounds occasionally, ten pounds frequently; can stand/walk for a total of two hours in an eight-hour day, ½ hour without interruption; can sit for a total of six hours in an eight-hour day, one hour without interruption; can occasionally climb, stoop, kneel, balance, crouch, and crawl; and is limited in his ability to push/pull (Tr. 262-265).

[Doc. 7, Pgs. 2-5].

As stated above, certain evidence was presented to the Appeals Council following the ALJ's decision, which was entered on November 7, 2007. That evidence is summarized by the plaintiff as follows:

> Plaintiff underwent psychological evaluation by Dr. Teresa E. Jarrell on March 24, 2009, at which time he endorsed problems with depression, anxiety, tension, restlessness, poor sleep, and flashbacks of coal mining accidents. Plaintiff presented with a mildly anxious and depressed mood; his affect appeared restricted; his recent and remote memory were mildly deficient; his insight appeared to be moderately deficient; his judgment appeared to be mildly deficient; and his capacity for concentration appeared to be mildly deficient. The diagnoses were major depressive disorder, single episode, severe without psychotic features; generalized anxiety disorder; and pain disorder associated with both psychological factors and a general medical condition; with a global assessment of functioning [hereinafter "GAF"] of 57. In summary, Dr. Jarrell opined Plaintiff has developed symptoms consistent with depression, generalized anxiety disorder, and pain disorder since becoming disabled from employment; he is not capable of obtaining and sustaining meaningful, competitive, sustained employment; problems with pace, persistence, punctuality, and attendance are highly likely and will interfere with his ability to meet expectation in any work setting; there were limitations of insight and judgment, indicating that he would have difficulty following detailed or complex job instruction; his capacity for concentration was moderately deficient, and there is clear evidence of preoccupation with pain, indicating he would have difficulty repetitively carrying out even simple job instructions; symptoms of anxiety and depression interfere with his ability to interact appropriately with others; and symptoms of psychiatric problems, as well as his physical health problems, will interfere with his ability to adapt in work environments (Tr. 267-273).

[Doc. 7, Pgs. 5 and 6].

The ALJ conducted a hearing at which the plaintiff and Cathy Sanders, a Vocational

4

Expert, testified. The ALJ referred Ms. Sanders to the medical assessment of Dr. Michael Hartman, a state agency reviewing physician, set forth at pages 242-248 of the transcript. Dr. Hartman opined, and the ALJ found, that the plaintiff could perform light work that did not require exposure to extreme heat or cold, wetness, humidity, or being around dust, fumes, or other respiratory irritants. Ms. Hartman identified the jobs of cashier, sales clerk, information clerk, food preparer, miscellaneous arcade attendant, lobby/ticket clerk, and indoor non-construction laborer. She stated that there were 32,000 such jobs in the region and one million in the United States as a whole. [Tr. 41-42]. Plaintiff's counsel at the hearing asked Ms. Sanders if there were jobs in the range of sedentary work, *and the person would be absent two or more days per month on a regular and sustained basis.* Ms. Sanders opined that such a person could not perform any jobs because of the absences. [Tr. 43-44].

In his hearing decision, the ALJ found that the plaintiff had severe impairments of degenerative disc disease and chronic obstructive pulmonary disease. [Tr. 16]. He found that the plaintiff had the residual functional capacity to perform light work that does not require working in extreme cold or heat, wetness, or humidity, or around dust, fumes and other respiratory irritants. He reviewed Dr. Eastridge's treatment notes and stated that his examinations were "essentially normal." [Tr. 17]. He found that "certain parts" of the opinions and findings of Dr. Rasmussen and Dr. Eastridge were in line with "the overall medical evidence of record." [Tr. 18]. He stated that Dr. Eastridge's opinion that "the claimant was unable to work" was "an issue reserved to the Commissioner." [Tr.. 18-19]. He rejected Dr. Konrad's assessment that the plaintiff had no limitations other than diminished visual acuity as "an underestimate of the severity of his (plaintiff's) limitations."

5

[Tr. 19]. Based upon Ms. Sander's testimony, he found that there were a substantial number of jobs which the plaintiff could perform with his residual functional capacity. Accordingly, he was found to be "not disabled." [Tr. 21].

Plaintiff makes two arguments in his brief. First, he asserts that the ALJ erred in not giving the opinions of Dr. Eastridge controlling weight as those of a treating physician. More particularly, he says that the ALJ did not articulate his reasons for rejecting Dr. Eastridge's opinions. Second, he says that the evidence presented to the Appeals Council regarding the psychological assessment of Ms. Jarrell was "new," "material," and that "good cause" existed for failing to incorporate it into the record before the ALJ.

If the only opinions offered by a physician who examined the plaintiff were those of Dr. Eastridge, and if the only contrary evidence was that of the non-examining state agency physicians, the Court might be inclined to agree with the plaintiff's first argument. However, Dr. Konrad also conducted a thorough examination and opined that the plaintiff had no limitations whatsoever other than diminished visual acuity. The ALJ did not feel that Dr. Konrad gave enough consideration to the severity of the plaintiff's conditions, and thus found him to be much more restricted than Dr. Konrad. But in spite of this, Dr. Konrad's assessment following his examination of the plaintiff still remains substantial evidence to support the ALJ's RFC finding. The combination of Dr. Konrad's report and the opinions of the State Agency physicians constitute substantial evidence in this regard.

It is true that *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir. 2004) requires an ALJ who rejects the opinion of a treating physician give a good reason for doing so. However, as pointed out by the Commissioner, the hearing decision must be considered as a whole and

6

if such a reading allows a reviewing court to understand the basis for rejection, then this requirement is satisfied. It is clear that Dr. Eastridge's opinion was given some weight, in that Eastridge opined that the plaintiff could lift and carry more weight than the state agency physicians said he could. Also, the ALJ pointed to the fact that Dr. Eastridge's objective findings were "essentially normal." He also pointed to other objective medical evidence which supported his RFC finding. There is ample substantial evidence to support the ALJ's decision and to understand the reasons he found as he did.

As for the psychological evidence which emerged for the first time 16 months after the ALJ rendered his decision, it may be "new" in the vernacular sense, but there was no good cause for a delay of nearly a year and a half in obtaining such evidence. No mention was made by the plaintiff at the hearing or in any of his pre-hearing submissions that he felt that he had a mental impairment. Also, Dr. Konrad, although not a mental health practitioner, evaluated plaintiff's mental status as part of his examination and found the plaintiff to be mentally normal [Tr. 225]. It is also unclear when the depression found by Ms. Jarrell began. Thus, materiality has not been demonstrated. Also, the Court simply does not believe that there is a "reasonable probability" that the ALJ would have reached a different decision.

This evidence simply comes far too late. The remedy is not a remand at this late date, but rather the filing of a new application asserting a mental impairment. *See Sizemore v. Sec'y of Health & Human Services*, 865 F.2d, 709, 712 (6th Cir. 1988).

There was substantial evidence to support the ALJ's decision, and there is no basis for remanding to consider the untimely psychological evidence. Accordingly, it is

7

respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 6] be DENIED, and that defendant Commissioner's Motion for Summary Judgment [Doc. 14] be GRANTED.[1]

Respectfully submitted:

 s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).